El Pueblo de Puerto Rico, demandante y apelado, *v.* Julio Libarona Enriquena, acusado y apelante. El Mismo *v.* El Mismo.

Núms. 9465 y 9466.—*Sometidos:* Junio 17, 1942. *Resueltos:* Junio 26, 1942.

*Ernesto Juan Fonfrías,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El fiscal de distrito de Bayamón presentó dos denuncias en la Corte Municipal de Vega Baja contra Julio Libarona Enriquena por violaciones de la Ley para regular la práctica de la cirugía dental en Puerto Rico, aprobada en agosto 8, 1925 (Ley núm. 75, de 1925, pág. 551) y enmendada por la número 31 de abril 20, 1929 (pág. 199), consistentes en que sin estar autorizado por ley para ejercer la cirugía dental en esta Isla, ejerció dicha profesión en Vega Baja en enero de 1941, construyendo y colocando en la boca de Andrés Lomba dos cajas dentales, y en marzo del mismo año ofreciendo sus servicios como cirujano dentista con oficina abierta en la casa de Juan Parés, calle Betances, Vega Baja, donde contrató trabajos dentales con Rafael Narvaez, María Adorno y Andrés Román, habiéndose ocupado en dicha oficina, mediante orden de allanamiento, dos cajas de cera, cinco *forceps,* una jeringuilla hipodérmica, unas pinzas de metal, un espejito de boca, una lima, una lamparita, dos moldes de cera, seis pedazos de pasta, una espátula, un diente montado en oro y otros efectos que se pusieron a disposición de la corte con la orden de allanamiento.

El 5 de diciembre de 1941 se celebraron juicios de nuevo en la Corte de Distrito de Bayamón y en ambos casos fué declarado culpable el acusado, condenándosele en cada uno a pagar cincuenta dólares de multa y en defecto de pago a sufrir un día de cárcel por cada dólar que dejara de satisfacer.

Apeló de las sentencias, señalando en el primer caso dos errores y cuatro en el segundo.

██ Los dos errores del primero guardan relación con la prueba. En uno se sostiene que la corte actuó movida por pasión, prejuicio y parcialidad en la apreciación e interpretación de la evidencia, y en el otro que dicha evidencia, como cuestión de derecho, es insuficiente.

Al comenzar el juicio ocurrió lo que sigue:

"Sr. Fonfrías: Aceptaríamos que la misma prueba que desfiló en el primer caso sería la misma que desfilara en el segundo caso; que el señor Lomba declararía lo mismo que Cano.

"Sr. Fiscal: El compañero aceptaría que el testigo Andrés Lomba declararía que mediante pago de $30 construyó y colocó en la boca de Lomba dos cajas dentales.

"Sr. Fonfrías: Aceptamos eso, de que por una suma construyó dos cajas y las colocó en la boca del señor Lomba.

"Sr. Juez: ¿Entonces la estipulación de las partes es que someten las partes el caso por la prueba producida en los dos casos anteriores, con la adición en cuanto al testigo Andrés Lomba, que éste declararía, si hubiese comparecido, de que este acusado le construyó y le colocó en la boca dos cajas de dientes por el precio de $30?

"Sr. Fonfrías: Exactamente.

"Sr. Juez: La corte aprueba la estipulación de las partes."

Luego se llamó a Oscar P. Monagas, secretario de la Junta Dental Examinadora, quien declaró que en los récords de la Junta Dental no figura el nombre de Julio Libarona, el acusado, como autorizado para ejercer la cirugía dental. Toda su declaración giró alrededor del libro registro y cuando ya al parecer había terminado, ocurrió lo que sigue:

"Sr. Fiscal: Vamos a presentar en evidencia el libro.

"Sr. Fonfrías: Nos vamos a oponer a que esa evidencia presentada sea admitida ya que no es completa esa evidencia, de acuerdo con el propio testimonio del testigo.

"Sr. Juez: La denuncia es una infracción a la Ley que regula la cirugía dental en Puerto Rico; esa ley empezó a regir en el 1905, de esa fecha para acá es el registro que se presenta como prueba; desde que se aprobó y comenzó a regir la ley."

Intervino seguidamente la defensa y el testigo insistió en que el acusado no aparecía registrado como dentista.

De acuerdo con la estipulación se trajo al récord la declaración de José Cano Delgado, que había dicho que el acusado le había compuesto una caja de dientes que tenía, poniéndole unos dientes que le faltaban, por cuyo trabajo le había cobrado dieciocho dólares.

La verdad es que no comprendemos cómo puede sostenerse que el juez actuó movido por pasión, prejuicio o parcialidad. Se dice que en uno de los dos casos anteriores a que la estipulación se refería, el acusado fué absuelto y que de igual modo debió serlo en éste porque el nuevo testigo Lomba habría de declarar lo mismo que había declarado Cano, y la declaración de Cano se estimó insuficiente.

No es así. La estipulación, tal como se modificó por el fiscal y se aceptó por la defensa, fué que Lomba declararía que mediante el pago de treinta dólares el acusado le construyó y colocó en su boca dos cajas dentales. Y ese hecho constituye claramente una violación de la ley cuando se realiza por persona no autorizada.

Se insiste por el apelante en que no hubo prueba suficiente para condenar porque el libro registro que llevó consigo el testigo Monagas, si bien se ofreció en evidencia por el fiscal, no llegó a admitirse por la corte.

Al analizar la prueba transcribimos lo que dicen los autos sobre el particular. Es cierto que de modo expreso no constan en ellos las palabras del juez declarando el libro admitido, pero implícitamente sí consta la admisión al desestimar como desestimó el juez razonadamente la oposición de la defensa.

Ninguno de los errores señalados fué, pues, cometido.

Los señalamientos de error del segundo recurso, el marcado con el número 9466, son, como dijimos, cuatro. Por el primero vuelve a imputarse pasión, prejuicio y parcialidad a la corte sentenciadora; por el segundo se alega que erró

al no decretar la eliminación de ciertos hechos consignados en la acusación que no se probaron en el juicio; por el tercero que también erró al no admitir en evidencia el título de Prótesis Dental del acusado y al no resolver que dicho título le daba derecho a ejercer la cirugía dental; y por el cuarto que erró al considerar que el acusado había actuado con malicia.

Ninguno fué cometido.

Hemos examinado la transcripción y tampoco encontramos rastro alguno en ella de pasión, prejuicio o parcialidad por parte del tribunal sentenciador. La sección 13 de la Ley número 31 de 1929, que es la aplicable, prescribe que toda persona que no estando legalmente autorizada para dedicarse al ejercicio de la cirugía dental, la ejerciere, o que viole las disposiciones de dicha ley, incurrirá en un delito menos grave. Y la 12, que según los términos de la ley se entenderá que ejerce la cirugía dental cualquier persona que mantuviere, exhibiere u operare una oficina equipada con instrumentos dentales usados en la práctica de la cirugía dental, siendo esta infracción la que se imputó en la denuncia al acusado y se probó en el juicio.

La evidencia del Pueblo consistió en las declaraciones de Vicente Rivera, Rafaela Narvaez, Anselmo Torres y María Adorno, a virtud de las cuales se concluye que al ser allanada en Vega Baja, calle Betances, la casa de Juan Parés, en la habitación que utilizaba el acusado como oficina se encontraron varias personas, una sentada en una silla cuya boca examinaba el acusado, "bregándole en ella", y varias esperando. La habitación la utilizaba el acusado para trabajos dentales y en la misma se ocuparon los instrumentos mencionados en la denuncia, propios todos para el ejercicio de la cirugía dental. El día del allanamiento llegaron a la oficina varios clientes a contratar servicios dentales con el acusado.

La prueba de éste consistió en su propia declaración. Dijo que era cirujano menor del hospital municipal de Vega

Baja y se dedicaba a la prótesis dental. Como cirujano menor podía hacer operaciones cuando no pasaran de dos centímetros dentro del vientre o de la cabeza y hacer fumigación en la boca y extracciones de muelas. En prótesis dental "Realizó la impresión de la boca sin tener que desgastar ni perfeccionar dientes ni nada absolutamente; impresionar, hacer dentaduras y colocarlas en la boca." Declaró sobre el uso que tenía cada uno de los instrumentos ocupados en su oficina, y dijo que la prótesis dental era una rama de la cirugía dental, y que él no se ocultaba para ejercerla, habiendo recibido un diploma del Board of Dental Schools de Nueva York, que registró en la Junta Superior de Sanidad de esta Isla en el año 1921.

Admitiendo que el acusado era un cirujano menor y obtuvo el diploma a que se refiere en su declaración, aún así el delito fué siempre cometido, porque ni como cirujano menor ni como autorizado a ejercer la prótesis dental, lo estaba para el ejercicio de la cirugía dental, y a ese ejercicio en general es que demuestra la prueba que estaba dedicada su oficina.

"Prótesis" en general, según el Diccionario Enciclopédico Hispano-Americano, tomo 17, página 444, es la parte de la terapéutica quirúrgica que tiene por objeto reemplazar artifícialmente un órgano que ha sido amputado en todo o en parte, u ocultar una deformidad; y según el "New International Dictionary de Webster," segunda edición, "prosthesis," en relación a la cirugía en general y la cirugía dental en particular, es la adición de alguna parte artificial al cuerpo humano, reemplazando la que falta, como una pierna, un ojo, un diente.

La prótesis dentaria es, pues, la parte del arte dentario que tiene por objeto substituir uno o muchos dientes cuya extracción ha sido preciso hacer, o que han caído a consecuencia de una lesión cualquiera de los mismos. Por consiguiente, un diploma demostrativo de la competencia de una

persona en esa rama, no puede tener el efecto de autorizarla a practicar la cirugía dental en general.

La cirugía dental incluye la prótesis dental, pero ésta no incluye a aquélla. Como se dijo en *Rex* v. *Cruikshanks*, 7 Alta. L. 92, 95, citado en 18 C. J. 487, "La ciencia de la odontología, al igual que muchas otras, ha progresado en los últimos tiempos, especialmente en lo que concierne a la conservación y reparación de los dientes, y a la sustitución de éstos por dientes artificiales, y podemos tomar conocimiento de lo que es materia de conocimiento general en este sentido. Se alega que la manufactura y suministro de dientes artificiales es un oficio mecánico no incluído dentro del concepto 'práctica de la profesión dental.' Este argumento puede tener gran peso en lo relacionado con la manufactura de dientes artificiales, pero el tomar las medidas (*impressions*) en las encías, y el adherir dientes a puentes que deberán ajustarse a las encías y el hacer empastaduras, no son actos que puedan considerarse como no incluídos en la frase 'práctica de la profesión dental.' "

*Por virtud de todo lo expuesto, deben declararse sin lugar los recursos y confirmarse las sentencias recurridas.*

El Juez Asociado Sr. Travieso no intervino.